972 F.2d 1348
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert L. ZIMMERMAN, Esq., Plaintiff-Appellant,
v.
NORTHWESTERN MUTUAL LIFE; Mall Management Associates;
Bishop Square Management Inc.; Frank F. Fasi, in his
capacity as Mayor of the City and County of Honolulu;
County of Honolulu; Douglas G. Gibb, in his capacity as the
former Police Chief of the City and County of Honolulu, et
al., Defendants-Appellees.
 No. 91-15705.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1992.
Decided Aug. 21, 1992.
 
 Before JAMES R. BROWNING, PREGERSON and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert Zimmerman brought an action against Northwestern Mutual Life and Bishop Square Management, Inc. (the "private defendants"), and against Frank Fasi, the mayor of Honolulu, Douglas Gibb, the former Honolulu Police Chief, and the city and county of Honolulu (the "public defendants"), alleging violations of 42 U.S.C. §§ 1983 and 1985 as well as various pendent state claims. The district court granted summary judgment in favor of both the private and public defendants on the federal claims and dismissed the pendent state claims. Zimmerman now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * The district court granted summary judgment in favor of the private and public defendants on the § 1983 claim on the ground that, inter alia, Tamarind Park is not a public forum. Based on this determination, the district court concluded that the ban on handbilling does not implicate Zimmerman's First Amendment rights. Therefore, continued the court, Zimmerman could not demonstrate that he was deprived of a constitutional right, the necessary predicate to a § 1983 action.
 
 
 4
 Zimmerman argues on appeal that the grant of summary judgment was improper because Tamarind Park is a public forum. We review de novo a grant of summary judgment. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). We agree that summary judgment was proper because Zimmerman failed to demonstrate a genuine issue of material fact as to whether Tamarind Park is a public forum.
 
 
 5
 The uncontroverted facts show that Tamarind Park is a portion of the privately owned Bishop Square commercial complex. As the district court held, the record evidence establishes that Tamarind Park is analogous to a privately owned shopping center, and the owners of the park are therefore free to enact a "no handbilling" regulation. See Hudgens v. NLRB, 424 U.S. 507 (1976); Lloyd Corp. v. Tanner, 407 U.S. 551 (1972).
 
 
 6
 Zimmerman argues that a 1983 newspaper advertisement for Bishop Square constitutes evidence that Tamarind Park was dedicated to public use and that therefore the park is a public forum. The advertisement states that the park is "open for everyone to use and enjoy." The advertisement does not, by itself, raise a genuine issue of material fact as to whether Tamarind Park was formally dedicated to public use, as it does not indicate that Tamarind Park was in all crucial respects open to the public in the same ways a public park is. The advertisement alone does not distinguish Tamarind Park from the shopping center in Lloyd, in which the Supreme Court held that property does not "lose its private character merely because the public is generally invited to use it for designated purposes." Lloyd Corp., 407 U.S. at 569; see also United States v. Kokinda, 110 S.Ct. 3115, 3121 (1990) (fact that postal entryways may be open to public does not by itself establish that such areas must be treated as traditional public fora under the First Amendment). The advertisement alone, therefore, is insufficient to create an issue of material fact as to whether Tamarind Park is a public forum.
 
 
 7
 Zimmerman presented no other evidence demonstrating that Tamarind Park was formally dedicated to public use. See Lloyd Corp., 407 U.S. at 570. He also failed to present any other evidence that the private defendants, who own and manage Tamarind Park, invited the public to use the park unconditionally. See id. at 565. Furthermore, because there are public sidewalks surrounding the park, Zimmerman easily could have moved to the public space and continued his handbilling. See id. at 566-67. Finally, Zimmerman has failed to present any evidence, beyond his mere allegations, that the handbilling ban was discriminatorily enforced. See id. at 568. Summary judgment on this issue is accordingly appropriate.
 
 
 8
 Zimmerman also contends that Tamarind Park should be deemed a public forum because the city of Honolulu sometimes is permitted to present "Aloha Friday" concerts in the park. This argument lacks merit. The fact that the private defendants allow entertainers to perform in Tamarind Park does not in and of itself render the park a public forum.[1]
 
 II
 
 9
 Zimmerman next argues that the total ban on handbilling is constitutionally defective. This argument is meritless. The Supreme Court in Lloyd, 407 U.S. 551, specifically upheld a total ban on handbilling in a privately owned shopping center. See also Hudgens, 424 U.S. 507. Because Tamarind Park, like the shopping center in Lloyd, was privately owned, and because Zimmerman failed to raise a genuine issue of material fact as to whether it was dedicated to public use or enforced its ban discriminatorily, a total ban does not infringe Zimmerman's First Amendment rights.
 
 III
 
 10
 The district court also granted summary judgment for the public and private defendants on Zimmerman's § 1983 claim based on an allegedly unconstitutional arrest and prosecution. Zimmerman makes three arguments an appeal: (1) that the citizen's arrest of Zimmerman constituted state action; (2) that the arrest violated his First Amendment rights; and (3) that the arrest and subsequent prosecution were unconstitutional because the police lacked a warrant.
 
 
 11
 We need not determine whether the citizen's arrest constituted state action because, even if there were state action, there is no evidence of any constitutional violation. Because Zimmerman has no meritorious claim that his First Amendment rights were violated by the ban on handbilling, neither the private defendants' decision to enforce that ban nor Zimmerman's subsequent arrest for trespassing implicates his First Amendment rights.
 
 
 12
 Zimmerman's allegation that a warrant was required prior to arresting him similarly lacks merit. Zimmerman presented no evidence demonstrating that probable cause was lacking. Because the arresting parties had probable cause to believe that Zimmerman was trespassing, the warrantless arrest did not constitute an infringement upon any constitutionally protected right. See, e.g., State v. Vance, 602 P.2d 933, 937 (Haw.1979) ("[A] misdemeanor arrest by a police officer without a warrant is lawful if the officer has probable cause to believe an offense is being committed in his presence."). Similarly, Zimmerman has not shown how his subsequent prosecution violated any of his constitutional rights.
 
 IV
 
 13
 The district court also entered summary judgment in favor of all the defendants on the § 1985 conspiracy claim. The court noted that for Zimmerman to sustain a § 1985 action, he must show racial or otherwise class-based, invidiously discriminatory animus. See Griffen v. Breckenridge, 403 U.S. 88, 102 (1971). The court then held that, because political candidates are not a member of a protected class under § 1985, Zimmerman failed to show the class-based animus necessary to support his claim.
 
 
 14
 Zimmerman now argues that the district court's finding was erroneous. The district court's holding, however, correctly followed our precedent, see Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir.1985), and is affirmed.[2]
 
 V
 
 15
 Zimmerman next contends that the district court abused its discretion when it refused to permit Zimmerman to file an amended complaint. We conclude, however, that the district court did not abuse its discretion in denying the motion to amend. See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir.1990).
 
 
 16
 The district court may deny a motion to amend "if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit." Id. The district court specifically considered all three factors in evaluating whether to allow Zimmerman to file an amended complaint, and we cannot say that its determination that all three factors indicated that a denial of the motion was appropriate constituted an abuse of discretion.
 
 VI
 
 17
 Zimmerman further argues that the district court improperly denied him leave to conduct additional discovery. We review a district court's denial of a motion for further discovery for abuse of discretion. See Burns v. County of King, 883 F.2d 819, 824 (9th Cir.1989).
 
 
 18
 We hold that the district court did not abuse its discretion in concluding that further discovery pertaining to the public defendants would be futile. As the district court noted, no relevant evidence remained to be discovered. On appeal, Zimmerman lists numerous questions which he contends can only be answered after additional discovery. These questions, however, are irrelevant. Even if additional discovery on these issues was permitted, Zimmerman would still be unable to show a violation of his constitutional rights, the predicate to a § 1983 action, or class-based animus of the type required to state a claim under § 1985.
 
 
 19
 The district court also refused to allow additional discovery against the private defendants. Zimmerman's request for additional discovery, however, was made more than a year after the complaint had been filed and after the court had already granted summary judgment in favor of the private defendants. Because Zimmerman had ample opportunity to conduct discovery prior to the filing of the summary judgment order, the district court did not abuse its discretion in denying Zimmerman's belated request.
 
 VII
 
 20
 Zimmerman next challenges the magistrate's order granting the private defendants' Motion to Set Aside Entry of Default. We review the magistrate's order setting aside the default judgment for abuse of discretion. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir.1985).
 
 
 21
 Zimmerman based his motion for default judgment upon his first amended complaint, which was filed without court approval. Although the magistrate did enter a default judgment against the defendants, he later set aside that default after finding that the first amended complaint "is, and was at the time of filing, a nullity because the filing of the First Amended Complaint was not authorized by the Court."
 
 
 22
 The magistrate acted within his discretion when he set aside a default judgment which had been based on a complaint that was effectively a "nullity."
 
 VIII
 
 23
 Zimmerman next argues that the pendent state claims should not have been dismissed. This claim lacks merit.
 
 
 24
 "When federal claims are dismissed before trial, the question whether pendent state claims should still be entertained is within the sound discretion of the district court. Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed." Schultz, 759 F.2d at 718 (citation omitted). Because Zimmerman's federal claims were properly disposed of on summary judgment, the district court did not abuse its discretion in dismissing the pendent state claims.
 
 IX
 
 25
 Finally, Zimmerman notes on appeal that he unsuccessfully sought the recusal of both the district judge and the magistrate. Although Zimmerman mentions the recusal issue, he presents absolutely no argument as to why the judges erred in declining to recuse themselves. Because Zimmerman has presented no argument, we deem the issue abandoned on appeal. See, e.g., Acosta-Huerta v. Estelle, 954 F.2d 581, 586 (9th Cir.1992).
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Zimmerman also argues that the ban on handbilling violates the Hawaii constitution. A § 1983 action, however, must be predicated on a violation of the federal constitution (or a federal statute). See 42 U.S.C. § 1983; see also, e.g., Guam Society of Obstetricians and Gynecologists v. Ada, No. 90-16704, slip op. 4191, 4200 (9th Cir. Apr. 16, 1992) (section 1983 creates liability for deprivation of "rights, privileges, or immunities secured by the [United States] Constitution or federal law")
 
 
 [2]
 Zimmerman also argues that there was "abundant state action" to support his § 1985 claim. We need not reach this issue, however, because Zimmerman has failed to present evidence of any class-based animus cognizable under § 1985